## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRW VEHICLE SAFETY SYSTEMS INC. and TRW AUTOMOTIVE GMBH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 08-268-GMS |
| TAKATA CORPORATION, TK HOLDINGS, INC. and TAKATA-PETRI AG, | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT TK HOLDINGS INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(e)

*Of Counsel:*

Michael D. Kaminski
Kenneth E. Krosin
C. Edward Polk, Jr.
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

Dated: July 3, 2008

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant TK Holdings Inc.*

## **TABLE OF CONTENTS**

**Page**

I.      NATURE AND STAGE OF PROCEEDING ................................................................1

II.     STATEMENT OF FACTS ........................................................................................2

        A.      TRW's Amended Complaint Vaguely Asserts Infringement Of Seven
              Different Patents ........................................................................................2

        B.      TRW Has Refused To Provide Any Guidance On The Identity Of The
              Accused Products........................................................................................5

III.    SUMMARY OF ARGUMENT .................................................................................7

IV.     ARGUMENT ..........................................................................................................8

        A.      TRW Has Not Provided Fair Notice Of Its Infringement Contentions..................8

              1.      TRW Has Not Identified A Single Accused Product ................................8

              2.      TRW Has Not Indicated Which Takata Defendant Is Accused Of
                  Infringing Which Patent .........................................................................9

               3.      The Asserted Patents Cover Very Different Aspects Of Airbag
                  Technology .........................................................................................11

        B.      TRW May Not Have Met Its Pre-Filing Rule 11 Obligations.............................13

        C.      TRW's Induced Infringement Claims Should Be Dismissed..............................14

        D.      TRW's Willful Infringement Claims Should Be Dismissed ...............................16

        E.      If The Amended Complaint Is Not Dismissed, TRW Should Be Ordered
              To Provide More Detail Regarding Its Infringement Allegations ........................18

V.      CONCLUSION .....................................................................................................20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acco Brands, Inc. v. ABA Locks Mfr.*, 501 F.3d 1307 (Fed. Cir. 2007)..................................14, 15

*Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090 (RWS), 2004 U.S. Dist. LEXIS
    20723 (S.D.N.Y. Oct. 19, 2004) ...................................................................................18

*Applera Corp. v. Thermo Electron Corp.*, No. Civ. A. 04-1230 (GMS), 2005 WL 524589
    (D. Del. Feb. 25, 2005)...............................................................................................19

*Bay Indus, Inc. v. Tru-Arx Mfg., LLC*, No. 06-C-1010., 2006 U.S. Dist. LEXIS 86757
    (E.D. Wis. Nov. 29, 2006) .................................................................................12, 18, 19

*Celanese Int'l Corp. v. Oxyde Chems., Inc.*, No. H-07-2981, 2008 U.S. Dist. LEXIS
    27811 (S.D. Tex. April 4, 2008) ....................................................................................15

*eSoft, Inc. v. Astaro Corp.*, No. 06-cv-00441-REB-MEH, 2006 U.S. Dist. LEXIS 52336
    (D. Colo. July 31, 2006) .......................................................................................12-13, 18-19

*F5 Networks, Inc. v. A10 Networks, Inc.*, No. C07-1927RSL, 2008 U.S. Dist. LEXIS
    31319 (W.D. Wash. Mar. 10, 2008)................................................................................17

*F & G Research, Inc. v. Google Inc.*, No. 06-60905-CIV-ALTONAGA/Turnoff, 2007
    U.S. Dist. LEXIS 70072 (S.D. Fla. Sept. 20, 2007)............................................................15

*Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) .......................................................10

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996).........................10, 13, 14, 16

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508 (Fed. Cir. 1990)..............16, 17

*Hewlett-Packard Co. v. Intergraph Corp.*, No. C 03-2517 MJJ, 2003 U.S. Dist. LEXIS
    26092 (N.D. Cal. Sept. 6, 2003).................................................................................9, 19

*In re Papst Licensing GmbH Patent Litigation*, No. MDL 1298, 2001 U.S. Dist. LEXIS
    2255 (E.D. La. Feb. 22, 2001) ................................................................................18, 20

*In re Seagate Tech.*, 497 F.3d 1360 (Fed. Cir. 2007)..........................................................16, 17

*Lituma v. United States*, No. 04 Civ. 8955NRB, 2005 WL 1705088 (S.D.N.Y. July 18,
    2005)....................................................................................................................12

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294 (Fed. Cir. 2002)......................14, 15

*Ondeo Nalco Co. v. EKA Chemicals, Inc.*, No. Civ.A.01-537-SLR, 2002 WL 1458853
    (D. Del. June 10, 2002) ....................................................................................8, 14, 15

*Phonometrics v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000)..................9

*Static Control Components, Inc. v. Future Graphics, LLC*, No. 07CV00007, 2008 U.S. Dist. LEXIS 3197 (M.D.N.C. Jan. 15, 2008) ........................................................ 19

*Taurus IP, LLC v. Ford Motor Co.*, 539 F. Supp. 2d 1122 (W.D. Wis. 2008) .......................... 18

*TI Group Automotive Sys. v. VDO North Am.*, No. C.A. 00-432-GMS, 2002 WL 484838 (D. Del. March 7, 2002) ........................................................................................ 16

*View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981 (Fed. Cir. 2000) .................................... 13

## RULES

Fed. R. Civ. P. 8 ............................................................................................................ 8, 10

Fed. R. Civ. P. 11 ......................................................................................................... 10, 13

Fed. R. Civ. P. 12 ......................................................................................................... 18, 19

Fed. R. Civ. P. 26(b) ........................................................................................................... 12

## OTHER AUTHORITY

6 Matthews, Annotated Patent Digest § 39:4, Pleading Theories of Infringement (June 2008) ........................................................................................................................ 8

## DECLARATIONS

Declaration of D. Hunter Stamey ........................................................................... 2, 3, 4, 5, 9

Declaration of Frank Roe ...................................................................................... 2, 6, 9

Declaration of Al Bernat ....................................................................................... 2, 6, 9

Declaration of Kenneth E. Krosin ......................................................................... 2, 6, 9

## I.     NATURE AND STAGE OF PROCEEDING

On May 5, 2008, TRW Vehicle Safety Systems Inc. and TRW Automotive GmbH (collectively "TRW") filed this suit against Takata Corporation, Takata-Petri AG and TK Holdings Inc. (collectively "Takata" or the "Takata Defendants"), alleging infringement of six different patents.  On June 25, 2008, TRW filed an Amended Complaint, further alleging infringement of a seventh patent.[1]

Takata Corporation is a Japanese company; its business activities cover all of Asia.  TK Holdings is a US company; its business activities cover all of North America.  Takata-Petri AG is a German company; its business activities cover all of Europe.

Takata had no prior warning that TRW was going to sue it for patent infringement, let alone on seven different patents.  The Amended Complaint fails to identify a single product as infringing any of these seven patents or specifically indicate which of the Takata Defendants is accused of infringing which asserted patent.  The Amended Complaint also alleges that the Takata Defendants are inducing unnamed third-parties to directly infringe the TRW patents through unnamed distribution channels.  This complete lack of specificity has prevented Takata from properly evaluating TRW's patent infringement allegations in the Amended Complaint and will make it extremely burdensome for Takata to comply with its discovery obligations in this case.

---

[1]     Only TK Holdings Inc. (the only U.S.-based defendant) was served with the original Complaint and the Amended Complaint.  The two foreign defendants (Takata Corporation and Takata-Petri AG) have not yet been served under the Hague Convention.  The original Complaint alleges infringement of U.S. Patent Nos. 5,490,690; 5,566,977; 5,782,489; 6,773,030; 5,957,487 and 6,155,595.  These patents are not "related" to each other in the patent sense (i.e., they do not disclose and claim the same technology), but rather disclose and claim very distinct and independent technologies.  The Amended Complaint alleges infringement of the six patents in the original Complaint, plus U.S. Patent No. 6,877,772.

After the original Complaint was filed, Takata tried several times to learn the identity of the allegedly infringing products through conversations with TRW's management, inside counsel, and outside counsel. (Declaration of D. Hunter Stamey, Ex. 1; Declaration of Frank Roe, Ex. 2; Declaration of Al Bernat, Ex. 3; Declaration of Kenneth E. Krosin; Ex. 4). In each instance, TRW refused to provide this information, other than offer vague generalities that the original Complaint was directed at various Takata product lines. It is for this reason that Takata has been forced to file the instant motion.

## II.    STATEMENT OF FACTS

### A.    TRW's Amended Complaint Vaguely Asserts Infringement Of Seven Different Patents

TRW's Amended Complaint alleges seven counts of patent infringement based upon seven very different patents. *See* Amended Complaint ¶¶ 32-33, 37-38, 42-43, 47-48, 52-53, 57-58 and 62-63. The asserted patents cover a wide range of technologies that are only generally related to safety restraint systems. For example, one patent covers the housing and fasteners used to enclose an airbag, while another patent covers the stitching on the airbag itself. Because of the wide range of technologies covered by the seven TRW patents, the allegations are far broader and this case is far more complicated than the average patent case, in which one or two related patents are typically asserted.

TRW's Amended Complaint manifestly fails to provide "fair notice" of its specific patent infringement allegations. Instead of identifying one or more accused infringing products for each asserted patent, the Amended Complaint simply alleges that the Takata Defendants, *inter alia*, make "safety restraint systems and products" that are allegedly covered by "at least one claim" of the seven asserted patents. *Id.* This lack of specificity will make it very difficult for

Takata to prepare its defense and will impose extraordinarily overbroad discovery obligations on Takata as this case proceeds.

The complexity of the task facing Takata in responding to TRW's overly-broad Amended Complaint is exemplified by the following facts:

- Takata has nearly two hundred different airbag "programs," each of which represents a single airbag system designed to fit into a specific automobile. Further, there are numerous airbag programs for a single automobile, *e.g.*, driver side, passenger side, head side airbag, side airbag, side curtain, *etc.* Stamey Decl. ¶ 8.

- Takata's approximately 200 different airbag programs are specifically designed for over 100 different automobiles. For example, Takata makes four separate airbags (*i.e.*, four separate airbag programs) which are used in each of the Ford Edge, Ford Fusion, Lincoln MKX, Lincoln MKZ, Mazda 6, Mercury Milan, Chevrolet Volt and Honda Element automobiles; and makes three separate airbags (*i.e.*, three separate airbag programs) that are used in each of the Honda Accord, Honda Pilot, Dodge Ram, Dodge Sprinter, BMW Z4, BMW Z4 Coupe, Jeep Wrangler, Jeep Wrangler SUT, Jeep Wrangler Unlimited, Ford Mustang, Chevrolet Camaro, Honda CRV, BMW X3, Honda Midsize CUV and Subaru Legacy automobiles. Stamey Decl. ¶ 9.

- Each of the approximately 200 different airbag programs are described in very detailed technical specifications within program notebooks. Each notebook typically includes hundreds of pages of technical details regarding the unique airbag assembly. An airbag developed for one program typically is unusable in

any other program without further application engineering.  For example, a driver airbag designed for use in a Mercedes Benz R-Class would not be interchangeable with a driver airbag designed for use in a Dodge Ram pickup.  Stamey Decl. ¶ 10. As such, each airbag specification is essentially "an island unto itself."

Because the Amended Complaint does not identify the allegedly infringing products, simply preparing any Answer will require review of each of the approximately 200 different airbag program specifications, and comparison of their descriptions against 126 patent claims in seven different patents.  It could take Takata many weeks to complete this task, including the infringement and validity analysis that Takata must undertake to satisfy its Rule 11 obligations.

In addition to failing to identify *what* product is being accused of infringement, TRW's Amended Complaint fails to specify *who* is accused of infringing which asserted patent.  Thus, TRW's Amended Complaint groups each of the three Takata Defendants into one basket and generally asserts that the group as a whole infringes each of the seven asserted patents.  As noted above, the Takata Defendants operate on three continents across the globe, with each Takata Defendant primarily operating in one respective continent.  The lack of clarity in TRW's Amended Complaint as to which of the Takata Defendants is accused of infringing which patent and TRW's failure to identify any accused products creates more confusion and provides little, if any, guidance on TRW's specific patent infringement allegations.

TRW's Amended Complaint also is defective because it alleges that each Takata Defendant has induced unnamed "third parties" and "customers" to infringe one of more of these 126 patent claims, *id.* at ¶ 28.  This defect is compounded because the Amended Complaint fails to allege whether these "third parties" and "customers" reside in the U.S. or abroad.

The Amended Complaint also avers that the alleged infringement by each Takata Defendant is "willful and deliberate." Amended Complaint ¶¶ 35, 40, 45, 50, 55, 60 and 65. TRW, however, fails to allege that Takata had prior knowledge of any of the seven asserted patents. Instead, it simply alleges that the Takata Defendants had "knowledge of the TRW Companies' patent rights," without ever pleading any actual knowledge by the Takata Defendants of any specific patent alleged in the Amended Complaint.[2] *Id.*

## B. TRW Has Refused To Provide Any Guidance On The Identity Of The Accused Products

Given the breadth of TRW's infringement allegations and the broad range of potentially accused products, Takata has sought clarification from TRW regarding the scope of the accused products on several occasions. Each time, TRW failed to identify any accused products. Such contacts include the following:

- During a conversation on or about May 14, 2008 with Paula Christ, TRW's in-house counsel, Takata's in-house counsel asked for additional details regarding the present lawsuit, including a list of the accused products/programs alleged by TRW to be infringed by one or more of the six asserted patents referenced in the original Complaint. Ms. Christ stated that she would provide a list of accused products/programs. Although Takata's in-house counsel has exchanged several e-mails and left voice messages regarding the present lawsuit, Ms. Christ still did not send a list of accused products/programs as was promised. Stamey Decl. ¶¶ 3-6.

---

[2]    Again, Takata had no prior warning that TRW was going to file suit against it for patent infringement, let alone on seven patents.

- On May 12, 2008, Frank Roe, Executive Advisor to TK Holdings, spoke with Mr. John Plant of TRW regarding the legal issues between TRW and Takata, including the present lawsuit. Mr. Plant indicated that he was personally aware of the legal issues between TRW and Takata, but was unable to identify which Takata programs or TRW patents the TRW Safety Business Unit believed to be infringed by Takata. Roe Decl. ¶ 3.

- Mr. Plant of TRW first indicated in the May 12, 2008 conversation that TRW would be willing to engage in business discussions with Takata, but later stated that "we just can't talk to you guys." He expressed frustration regarding the legal issues between TRW and Takata and specifically pointed to several pending or recent legal actions taken by Takata against TRW in Europe. Roe Decl. ¶ 4.

- On or about May 30, 2008, Kenneth Krosin, Takata's outside litigation counsel, spoke with TRW's outside litigation counsel Robert Kahrl for the purpose of obtaining more detail on TRW's infringement allegations. During this conversation, Mr. Krosin asked Mr. Kahrl to provide additional details regarding the above-captioned infringement action, including the identity of the accused products. Mr. Kahrl refused to provide this information. Krosin Decl. ¶¶ 4-5.

- Al Bernat, Group Vice President for TK Holdings Inc., met with Don Shiba and Joe Gaus of TRW Automotive to try to facilitate a business resolution of this suit. These TRW employees explained that TRW had spent two years and a significant amount of money in determining that Takata has infringed TRW's patents, yet were unable to provide any further information or detail regarding TRW's patent infringement allegations. Bernat Decl. ¶¶ 3-5.

- TRW's Amended Complaint, filed six weeks after its original Complaint, fails to identify any accused products, despite Takata's repeated efforts to get this information after TRW filed its original Complaint. Indeed, the only difference between the two is that the Amended Complaint adds new Count VII asserting infringement of U.S. Patent No. 6,877,772.

## III. SUMMARY OF ARGUMENT

TRW's patent infringement allegations fail to meet the basic pleading requirements of the Federal Rules of Civil Procedure and, thus, should be dismissed. There are three problems in TRW's Amended Complaint.

*First,* TRW's Amended Complaint fails to provide the Takata Defendants with fair notice of TRW's patent infringement allegations. Even after repeated requests to provide such fair notice, TRW's Amended Complaint still fails to identify a single accused product or give guidance to the Takata Defendants in identifying the accused products on its own, or indicate which Takata Defendant is accused of infringing which asserted patent. TRW's "hide and seek" tactics have seriously hampered the Takata Defendants' ability to respond to the Amended Complaint and defend themselves against TRW's allegations. Further, the Takata Defendants will be under a severe and unfair burden later in discovery if TRW is allowed to engage in a discovery "fishing expedition" on the almost two hundred Takata airbag products and programs regardless of whether they have any relevance to this case.

*Second,* TRW's induced infringement allegations are facially insufficient because TRW has not alleged direct infringement by any identified third party and TRW has not alleged that Takata had knowledge of the seven asserted patents.

***Third,*** TRW's willful infringement allegations also are facially insufficient because, as noted above, TRW has not alleged that Takata had prior knowledge of the seven asserted patents before TRW filed this lawsuit.

## IV.    ARGUMENT

FRCP 8(a) requires that TRW provide "fair notice" of its patent infringement claims and the grounds upon which those claims rest. *Ondeo Nalco Co. v. EKA Chemicals, Inc.*, No. Civ.A.01-537-SLR, 2002 WL 1458853 at *1 (D. Del. June 10, 2002). If the Amended Complaint does not meet the "fair notice" requirement of Rule 8(a), it should be dismissed or, at a bare minimum, TRW should be ordered to specify the allegedly infringing products and identify the Takata Defendants which allegedly have infringed each of the TRW patents.

### A.    TRW Has Not Provided Fair Notice Of Its Infringement Contentions

TRW's Amended Complaint has not provided the Takata Defendants with fair notice of TRW's patent infringement allegations because it fails to identify a single accused product or give guidance to Takata in identifying the accused products on its own, and fails to indicate which Takata Defendant is accused of infringing which patent.

#### 1.    TRW Has Not Identified A Single Accused Product

Rule 8(a) requires, at a minimum, that a patent infringement complaint expressly identify the accused products or provide some guidance so that the defendant can identify the accused products itself. *See, e.g., Ondeo*, 2002 WL 1458853 at *1 ("With the exception of the description of the 8692 product, the pleadings are too vague to provide plaintiff with fair notice of which products are accused of infringing defendant's patents."); *see also* 6 *Matthews*, Annotated Patent Digest § 39:4, Pleading Theories of Infringement (June 2008) ("Where possible, at least one accused product should be identified in the complaint with some degree of specificity."). "In the context of patent litigation, the Federal Circuit has noted that 'this

requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.'" *Hewlett-Packard Co. v. Intergraph Corp.*, No. C 03-2517 MJJ, 2003 U.S. Dist. LEXIS 26092 at *5 (N.D. Cal. Sept. 6, 2003) (citing *Phonometrics v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)).

Despite statements that it would provide a list of accused products, TRW has refused to do so.  (Declaration of D. Hunter Stamey, Ex. 1; Declaration of Frank Roe, Ex. 2; Declaration of Al Bernat, Ex. 3; Declaration of Kenneth E. Krosin; Ex. 4).  Instead, TRW vaguely asserts in its Amended Complaint that Takata makes "safety restraint systems and products" that are allegedly covered by "at least one" of the asserted 126 patent claims.  Amended Complaint ¶¶ 31-32, 36-37, 46-47, 51-52, 56-57 and 61-62.  Given the breadth of TRW's infringement assertions, the global reach of the Takata Defendants' business operations and the worldwide disbursement of Takata's customers, Takata will need to expend a substantial and unreasonable amount of time and resources evaluating a large number of products against numerous patent claims to provide any meaningful response to TRW's Amended Complaint.  This will be a daunting task because the seven asserted patents cover very different airbag technologies, as is evident from even a cursory review of the asserted patent claims.

> **2.    TRW Has Not Indicated Which Takata Defendant Is Accused Of Infringing Which Patent**

TRW's Amended Complaint also does not provide the Takata Defendants with fair notice because it fails to indicate which Takata Defendant is accused of infringing which patent.  An example of TRW's boiler-plate infringement claim is provided below:

> 37.    Defendants have infringed, and/or induced infringement of the '977 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling, causing to be sold, importing, and/or causing to be imported products that infringe one or more claims of the '977 Patent in this judicial district and elsewhere in the United States.

Amended Complaint at ¶ 37; *see also* Amended Complaint at ¶¶ 32, 42, 47, 52, 57, and 62. Further, TRW's Amended Complaint defines "Defendants" collectively to include each of the three Takata Defendants, Amended Complaint at p. 2, and then generically asserts that "Defendants" as a whole infringe each of the seven asserted patents.

Courts routinely have held that lumping defendants together in such a broad infringement allegation fails to satisfy the notice pleading requirements of Rule 8(a)(2). *See, e.g.*, *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 960-61 (S.D. Cal. 1996) ("The complaint fails to provide fair notice of what the plaintiff's claims are. Each of the five defendants is accused of each of the three different types of infringement . . . . Even were there no other deficiencies, this confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint.") (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together of multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2))).

The need to specify the accused activities of each defendant is especially critical in this case because the three Takata Defendants operate on three different continents across the globe. Takata Corporation is a Japanese company with business activities in Asia. TK Holdings is a U.S. company with business activities in North America. And, Takata-Petri AG is a German company with business activities in Europe. Each business will need to research its own products and activities against TRW's broad infringement allegations. By failing to specify which asserted patent each Takata Defendant supposedly infringes, TRW has made it exceedingly difficult for these defendants to conduct their own Rule 11 pre-filing inquiry and provide a meaningful response to TRW's Amended Complaint. As such, TRW has not provided

fair notice of its patent infringement allegations and its Amended Complaint should be dismissed. *Id.*

### 3.    The Asserted Patents Cover Very Different Aspects Of Airbag Technology

The seven TRW patents cover a variety of airbag technologies, which makes this case far more complex than cases in which multiple related patents are asserted. Specifically, (1) U.S. Patent No. 5,490,690 covers housing and fasteners used to enclose an airbag, (2) U.S. Patent No. 5,566,977 covers the stitching used to sew an airbag together, (3) U.S. Patent No. 5,782,489 covers the use of adhesives to keep an airbag stitching from separating during use of the airbag, (4) U.S. Patent No. 6,733,030 covers the use of a vent to control inflation of an airbag, (5) U.S. Patent No. 6,877,772 covers an airbag head flap, (6) U.S. Patent No. 5,957,487 covers lateral airbags, and (7) U.S. Patent No. 6,155,595 covers knee airbags. With but one exception, each of these patents has different named inventors.[3]

To provide a responsive pleading to TRW's infringement allegations regarding these seven patents, Takata will need to review many thousands of pages of technical specifications for approximately 200 different airbag programs to:

- Determine how each of the approximately 200 airbag housings are constructed, how the chambers (if any) in these housings are constructed and how these housings are fastened together;

- Determine how each of the approximately 200 airbags are stitched together;

- Determine if either the approximately 200 airbags use an adhesive to keep the stitching together when the airbag is being used;

- Determine if either of the approximately 200 airbags use a vent to control airbag inflation; and

---

[3]    Kurt F. Fischer is named as the sole inventor on the '030 patent and one of three joint inventors on the '772 patent.

11

- Determine how the almost 50 different "side" or "lateral" impact airbags made by Takata operate and are connected to the automobile.

Takata will need to expend significant time and resources performing these daunting tasks to unearth the bases for TRW's infringement allegations merely to provide a responsive pleading to the Amended Complaint.[4]  In addition, the lack of specificity in the Amended Complaint will lead to discovery problems later in this case.  In particular, if more specificity is not added to the Amended Complaint, TRW will have free reign to conduct a "fishing expedition" into of all of Takata's products and programs on the theory that such discovery is "relevant" to its overly-broad infringement claims under Fed. R. Civ. P. 26(b).  *Lituma v. United States*, No. 04 Civ. 8955NRB, 2005 WL 1705088 at *2 (S.D.N.Y. July 18, 2005) ("Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.") (internal quotation marks omitted).

The liberal notice pleading requirements of Rule 8 were never intended to create such an inequitable result.  *See, e.g., Bay Indus, Inc. v. Tru-Arx Mfg., LLC*, No. 06-C-1010., 2006 U.S. Dist. LEXIS 86757 at *5 (E.D. Wis. Nov. 29, 2006) ("[B]y failing to identify any allegedly infringing product or to set forth a limiting parameter, plaintiff in effect is requiring defendant to compare its approximately 40 products to at least 20 claims of the '433 patent to formulate a response.  I find this to be an unreasonable burden on the defendant, especially in light of the fact that in a patent infringement case the plaintiff bears the burden of proof. Defendant should not have to guess which of its products infringe nor guess how its products might fall within plaintiff's interpretation of the claims of the patent.") (internal citations omitted); *eSoft, Inc. v.*

---

[4]    Takata cannot understand why TRW alleges that all defendants infringe U.S. Patent No. 6,155,595, covering knee airbags (Count VII), because TK Holdings does not sell knee airbags.

*Astaro Corp.*, No. 06-cv-00441-REB-MEH, 2006 U.S. Dist. LEXIS 52336 at *4-5 (D. Colo. July 31, 2006) ("Defendant cannot realistically be expected to frame a responsive pleading without risk of prejudice in the absence of any indication as to which of its products are accused. Plaintiff cannot foist the burden of discerning what products it believes infringe the patent onto defense counsel, regardless of their skill and expertise.") (footnote omitted).

In sum, requiring Takata to review nearly 200 airbag program specifications, compare those specifications to seven very different patents, and then to provide discovery on each of those programs would be unreasonable. Indeed, TRW already should have identified at least one accused product for each asserted patent. *See* Section IV.B below. There is no good reason for TRW to withhold this information.

### B.    TRW May Not Have Met Its Pre-Filing Rule 11 Obligations

Rule 11 requires that a patentee conduct a reasonable infringement investigation before filing suit. *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted."); *see also Bay Indus.*, 2006 U.S. Dist. LEXIS 86757 at *6 ("[R]equiring that plaintiff identify the product or products that allegedly infringe its patent insures that plaintiff has a proper basis for bringing suit in the first place. In filing a complaint in federal court, an attorney is representing to the court that a reasonable inquiry has been made to insure that the factual allegations have evidentiary support."); *Gen-Probe,* 926 F. Supp. at 961-62.

Assuming that counsel for TRW met its Rule 11 obligations in this case, the burden on TRW in identifying the accused products will be minimal. In contrast, Takata would be required to expend an inordinate amount of time and effort to try to develop this same information. *Bay*

*Indus.*, 2006 U.S. Dist. LEXIS 86757 at *5-6 ("Assuming plaintiff has properly investigated his claim before filing suit, there is no reason not to inform the defendant precisely which products are at issue."). There simply is no good reason for TRW to refuse to provide notice of the accused products it already should have identified. *See, e.g.*, *Ondeo*, 2002 WL 1458853 at *1 (dismissing complaint for failure to provide notice of the accused products).

### C.     TRW's Induced Infringement Claims Should Be Dismissed

TRW's induced infringement allegations are insufficient as a matter of law and must be dismissed. Induced infringement requires proof of two elements: (1) that there is an entity which directly infringes one or more of the asserted patents; and (2) that Takata acted with an affirmative intent to cause that direct infringement. *See Acco Brands, Inc. v. ABA Locks Mfr.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) ("In order to prevail on an inducement claim, the patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'") (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)).

When pleading an induced infringement claim, a complaint must identify the direct infringer, *Ondeo*, 2002 WL 1458853 at *1, and must provide some information about defendant's activities that constitute active inducement, *Gen-Probe* 926 F. Supp. at 960-61. TRW's Amended Complaint does neither.

*First*, TRW has not identified any third parties that it contends were induced by Takata to infringe the TRW patents. An example of TRW's boiler-plate induced infringement claim is as follows:

> 37.     Defendants have infringed, and/or induced infringement of the '977 Patent by making, using, causing to be used, offering to sell, causing to be offered for sale, selling,

> causing to be sold, importing, and/or causing to be imported
> products that infringe one or more claims of the '977 Patent in this
> judicial district and elsewhere in the United States.

Amended Complaint at ¶ 37; *see also* Complaint at ¶¶ 12, 22, 26, 32, 42, 47, 52, 57 and 62.

Because TRW has not identified a direct infringer, there can be no induced infringement as a

matter of law. *See, e.g., Ondeo*, 2002 WL 1458853 at *1 ("[T]he pleadings fail to allege direct

infringement by a party other than ONDEO Nalco and, therefore, insufficiently plead induced

infringement.").[5]

Second, TRW has not alleged any facts whatsoever to show specific intent by Takata to

cause direct infringement by the unnamed third parties. *Acco*, 501 F.3d at 1312 ("In order to

prevail on an inducement claim, the patentee must establish … 'second that the alleged infringer

knowingly induced infringement and possessed specific intent to encourage another's

infringement.'") (quoting *Minn. Mining & Mfg.*, 303 F.3d at 1304-1305). Indeed, as detailed in

Section IV.E below, TRW has not even alleged that Takata was aware of the asserted patents.

Absent awareness of the asserted patents, there can be no induced infringement. *F & G

Research, Inc. v. Google Inc.*, No. 06-60905-CIV-ALTONAGA/Turnoff, 2007 U.S. Dist.

LEXIS 70072 at *44-45 (S.D. Fla. Sept. 20, 2007) (holding that plaintiff's induced infringement

claim "lacked any reasonable basis in law or fact" because, *inter alia*, there was no evidence that

---

[5]       Another hurdle to TRW's induced infringement claim is the fact that two of the named
defendants (Takata Corporation and Takata-Petri AG) reside in foreign countries and sell their
products to entities that also reside in foreign countries. TRW cannot base a direct infringement
claim on activities that occur in a foreign country without somehow tying its allegations
regarding those defendants to the United States. *See, e.g., Celanese Int'l Corp. v. Oxyde Chems.,
Inc.*, No. H-07-2981, 2008 U.S. Dist. LEXIS 27811 at *7-8 (S.D. Tex. April 4, 2008) ("Plaintiff
has failed to present evidence of direct infringement by a third party … The [product] at issue
was produced in China by a Chinese company. This conduct was not 'within the United States'
and, as a result, was not direct infringement of the `068 Patent by the Chinese company. Absent
direct infringement, there can be no inducement by Defendant and summary judgment on this
claim is granted.") (footnote omitted).

defendants were aware of the asserted patents). TRW's induced infringement claim also should be dismissed for this reason standing alone.

In sum, TRW has not sufficiently plead a claim for induced infringement and its induced infringement claims should be dismissed. *See, e.g., Gen-Probe*, 926 F. Supp. at 955 ("Because the allegations in the complaint, even if proven, would not support a claim for inducement of infringement, the federal claims against CNS are dismissed for failure to state a claim."); *see also TI Group Automotive Sys. v. VDO North Am.*, No. C.A. 00-432-GMS, 2002 WL 484838 (D. Del. March 7, 2002) (dismissing induced infringement claim for failure to adequately plead intent element).

### D.    TRW's Willful Infringement Claims Should Be Dismissed

TRW's willful infringement allegations should also be dismissed because they are facially insufficient as a matter of law. The law is well-settled that there can be no finding of willful infringement unless the accused infringer had prior knowledge of the asserted patent. *In re Seagate Technology*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*) ("To establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that the objectively-defined risk (determined by the record in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer."); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (holding that a "party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."). TRW fails to allege that Takata had knowledge of any of the seven asserted patents before TRW filed the present lawsuit, let alone knowledge of an objectively-defined risk of infringement.

16

To illustrate, the following is TRW's relevant assertion regarding willful infringement of the '690 patent (TRW's assertions regarding the other six patents are identical, except for the patent number):

> 35.    Defendants have, upon information and belief, infringed and are infringing the '690 Patent **with knowledge of the TRW Companies' patent rights** and without a reasonable basis for believing their conduct is lawful. Defendants' infringement has been and continues to be willful and deliberate, and will continue unless enjoined by this Court, making this an exceptional case and entitling plaintiffs to increased damages and reasonable attorneys' fees pursuant to U.S.C. §§ 284 and 285.

Amended Complaint ¶ 35 (emphasis added); *see also* Complaint at ¶¶ 40, 45, 50, 55, 60 and 65.  The above paragraph and the paragraphs relating to the other asserted patents do not allege that Takata had any prior knowledge of the actual asserted patents.   Rather, TRW carefully crafts its allegations only to refer to generic knowledge of TRW's "patent rights," with no tie to any specific patent.  This deficiency is fatal to TRW's willfulness claims.  *F5 Networks, Inc. v. A10 Networks, Inc.*, No. C07-1927RSL, 2008 U.S. Dist. LEXIS 31319 at *2-5 (W.D. Wash. Mar. 10, 2008) (holding that the complaint did not contain any facts to support a claim of willful infringement, particularly because the complaint did not allege prior knowledge of the patent-at-issue); *Gustafson*, 897 F.2d at 511 (holding that there can be no willfulness if the accused infringer had no prior knowledge of the asserted patents).

Further, Takata's post-filing knowledge of the asserted patents does not save TRW's faulty willfulness allegations.  *In re Seagate Tech.*, 497 F.3d at 1374 ("[A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.").  This is especially true in this case because TRW did not move for a preliminary injunction.  *Id.* ("A patentee who does not attempt to stop an accused

infringer's activities [by filing for a preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.").

In sum, TRW's willfulness claims are facially deficient as a matter of law and, thus, should be dismissed under FRCP 12(b)(6).  *TI Group Automotive*, 2002 WL 484838 (dismissing claim for failure to plead essential element).

### E.    If The Amended Complaint Is Not Dismissed, TRW Should Be Ordered To Provide More Detail Regarding Its Infringement Allegations

Alternatively, Takata moves for a more definite statement of TRW's infringement allegations under Rule 12(e).  *Bay Indus.*, 2006 U.S. Dist. LEXIS 86757 at *3 ("In patent infringement cases, courts have found Rule 12(e) relief appropriate where the complaint fails to identify any allegedly infringing product or at least set forth a limiting parameter."); *In re Papst Licensing GmbH Patent Litigation*, No. MDL 1298, 2001 U.S. Dist. LEXIS 2255 at *3-5 (E.D. La. Feb. 22, 2001) ("It is apparent, however, that the number of patents and products in the case before me are far greater than those contemplated in the sample complaint, which would justify a request for greater specificity."); *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04 Civ. 3090 (RWS), 2004 U.S. Dist. LEXIS 20723 at *13-14 (S.D.N.Y. Oct. 19, 2004) ("Although motions pursuant to Rule 12(e) are generally disfavored where prompt resort to discovery may provide an adequate means for ascertaining relevant facts ... courts have considered Rule 12(e) relief appropriate in patent infringement cases where a plaintiff has failed to identify any allegedly infringing product or products.").  "The focus of Rule 12(e) is to allow defendants to properly respond to a plaintiff's allegations." *Taurus IP, LLC v. Ford Motor Co.*, 539 F. Supp. 2d 1122, 1126 (W.D. Wis. 2008).

If this Court finds that dismissal under Rule 12(b)(6) is not the appropriate remedy, then TRW should be ordered to provide more detail to its infringement allegations.  *eSoft*, 2006 U.S.

Dist. LEXIS 52336 at *4-5 ("Defendant cannot realistically be expected to frame a responsive pleading without risk of prejudice in the absence of any indication as to which of its products are accused.  Plaintiff cannot foist the burden of discerning what products it believes infringe the patent onto defense counsel, regardless of their skill and expertise. Other federal courts have found relief under Rule 12(e) appropriate in similar circumstances.") (footnote omitted).[6]

As noted above, it would create an unreasonable burden on Takata to respond to the Amended Complaint, especially where information already in TRW's possession (assuming TRW met its Rule 11 obligations) would substantially lower this burden.  *See, e.g., Bay Indus.*, 2006 U.S. Dist. LEXIS 86757 at *5; *Hewlett-Packard*, 2003 U.S. Dist. LEXIS 26092 at *6-7; *Taurus IP*, 539 F. Supp. 2d at 1127 ("At the very least, a plaintiff's failure to specify which claims it believes are infringed by a defendant's products places an undue burden on the defendant, who must wade through all the claims in a patent and determine which claims might apply to its products to give a complete response. A plaintiff's failure to specify patent claims hinders the defendant's ability to prepare a defense."); *Static Control Components, Inc. v. Future Graphics, LLC*, No. 07CV00007, 2008 U.S. Dist. LEXIS 3197 at *5 (M.D.N.C. Jan. 15, 2008)

---

[6]     Takata acknowledges this Court's ruling in *Applera Corp. v. Thermo Electron Corp.*, No. Civ. A. 04-1230 (GMS), 2005 WL 524589 (D. Del. Feb. 25, 2005). However, *Applera* is distinguishable on its facts. In *Applera*, there was a single U.S. defendant and a single patent at issue, the single patent including only two independent claims each relating to the same technology. *Id.* at *1. Moreover, there was a prior litigation involving that patent that shed light on the patentee's claims and defenses. *Id.* at *1 & n. 3. Here, in contrast, there are three defendants that operate on three different continents. All three defendants have been accused of different theories of infringement involving seven patents that collectively include numerous independent claims that cover very different aspects of safety-restraint technology. In addition, TRW has made claims that are vague and confusing because TRW accuses all of the Takata Defendants as a whole of infringing each of the seven asserted patents.  Moreover, *Applera* is distinguishable because TRW previously assured Takata that TRW would provide a listing of accused products (Stamey Decl. ¶¶ 3-6), but rather than providing such a listing as promised, TRW added to the confusion by vaguely asserting infringement of an additional seventh patent. This type of gamesmanship was not considered by the Court in *Applera*.

("Absent a more definite statement regarding the specific [products] that Static Control asserts are allegedly infringing, Future Graphics cannot 'reasonably be required to frame a responsive pleading.'") (quoting *In re Papst*, 2001 U.S. Dist. LEXIS 2255 at *2).

## V.    CONCLUSION

For all of the foregoing reasons, TK Holdings Inc. respectfully requests that its motion for an order dismissing TRW's Amended Complaint be granted or, in the alternative, that the Court order TRW to provide a more definite statement of its patent infringement claims.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant TK Holdings Inc.*

*Of Counsel:*

Michael D. Kaminski
Kenneth E. Krosin
C. Edward Polk, Jr.
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

Dated: July 3, 2008

# EXHIBIT 1

<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF DELAWARE</u>

| | |
|---|---|
| TRW VEHICLE SAFETY SYSTEMS INC<br>and<br>TRW AUTOMOTIVE GmbH<br><br>            Plaintiffs,<br><br>        v.<br><br>TAKATA CORPORATION,<br>TK HOLDINGS INC.<br>and<br>TAKATA-PETRI AG<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 08-268-GMS |

## DECLARATION OF D. HUNTER STAMEY

## IN SUPPORT OF <u>MOTION TO DISMISS</u>

I, D. Hunter Stamey, declare as follows:

1.  I am a member in good standing of the Bar of North Carolina and in-house counsel for Defendant TK Holdings Inc. in the above action.

2.  I submit this declaration in support of TK Holdings Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for a More Definite Statement under Fed. R. Civ. P. 12(e).

3.  On or about May 14, 2008, I spoke with TRW's in-house counsel, Paula Christ, at which point I asked for additional details regarding the above-captioned infringement action, including requesting a list of the accused products/programs alleged by the TRW plaintiffs to infringe one or more of the six asserted patents referenced in the original Complaint.

4.  None of the Takata defendants had any prior knowledge that TRW would be filing a patent infringement lawsuit.

5.  Ms. Christ informed me during the conversation on May 14, 2008 that she would provide a list of accused products/programs.

1

6.      Although I have exchanged several e-mails and left voice messages regarding the above titled action, I still have not received a list of accused products/programs as was promised by Ms. Christ.

7.      TK Holdings needs this information in order to properly prepare a response to the complaint and each of the Takata defendants need this information in order to begin collecting documents that are likely to be requested by TRW during discovery.

8.      Takata has nearly two hundred different airbag "programs," each of which represents a single airbag system designed to fit into a specific automobile. Further, there are numerous airbag programs for a single automobile, *e.g*, driver side, passenger side, head side airbag, side airbag, side curtain, *etc.*

9.      The three Takata defendants have approximately 200 different airbag programs specifically designed for over 100 different automobiles.  For example, Takata makes four separate airbags (*i.e*., four separate airbag programs) which are used in each of the Ford Edge, Ford Fusion, Lincoln MKX, Lincoln MKZ, Mazda 6, Mercury Milan, Chevrolet Volt and Honda Element automobiles; and makes three separate airbags (*i.e*., three separate airbag programs) that are used in each of the Honda Accord, Honda Pilot, Dodge Ram, Dodge Sprinter, BMW Z4, BMW Z4 Coupe, Jeep Wrangler, Jeep Wrangler SUT, Jeep Wrangler Unlimited, Ford Mustang, Chevrolet Camaro, Honda CRV, BMW X3, Honda Midsize CUV and Subaru Legacy automobiles.  .

10.     Each of the approximately 200 different airbag programs are described in very detailed technical specifications within program notebooks.  Each notebook typically includes hundreds of pages of technical details regarding the unique airbag assembly.  An airbag developed for one program typically is unusable in any other program without further application engineering.  For example, a driver airbag designed for use in a Mercedes Benz R-Class would not be interchangeable with a driver airbag designed for use in a Dodge Ram pickup.

11.     It would be a significant burden on the Takata defendants to be required to review each of these 200 airbag programs to try and discover the bases for TRW's infringement allegations.  It could take several weeks for Takata to perform this task and would cause significant disruption to Takata's business.

        I declare under penalty of perjury that the foregoing is true and correct to

the best of my knowledge, information and belief.

        June 30, 2008

                                        D. Hunter Stamey

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TRW VEHICLE SAFETY SYSTEMS INC<br>and<br>TRW AUTOMOTIVE GmBH | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08-268-GMS |
| v. | ) ) ) | |
| TAKATA CORPORATION,<br>TK HOLDINGS, INC.<br>and<br>TAKATA-PETRI AG | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF FRANK ROE IN SUPPORT OF MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) OR, IN THE ALTERNATIVE, FOR A MORE
DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)**

I, Frank Roe, declare as follows:

1.    I am an Executive Advisor to TK Holdings, Inc., President of Highland Industries Inc., and am responsible for the TPSA Picarras Webbing Operations.

2.    I submit this declaration in support of TK Holdings, Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for a More Definite Statement under Fed. R. Civ. P. 12(e).

3.    On May 12, 2008, I spoke with Mr. John Plant of TRW regarding the legal issues between TRW and Takata, including the present lawsuit. Mr. Plant indicated that he was personally aware of the legal issues between TRW and Takata, but was unable to identify which patents he or the TRW Safety Business Unit believed to be infringed by Takata.

WASH_4352899.1                              1

4.    Mr. Plant first indicated that TRW would be willing to engage in business discussions with Takata, but later in the conversation he stated that "we just can't talk to you guys." He expressed frustration regarding the legal issues between TRW and Takata and specifically pointed to several pending or recent legal actions taken by Takata against TRW in Europe.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  July 1, 2008                                 _____
                                                                    Frank Roe

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRW VEHICLE SAFETY SYSTEMS INC<br>and<br>TRW AUTOMOTIVE GmbH<br><br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>TAKATA CORPORATION,<br>TK HOLDINGS INC.<br>and<br>TAKATA-PETRI AG<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 08-268-GMS |

## DECLARATION OF AL BERNAT IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)

I, Al Bernat, declare as follows:

1.　　I am Group Vice President for TK Holdings Inc.

2.　　I submit this declaration in support of TK Holdings Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for a More Definite Statement under Fed. R. Civ. P. 12(e).

3.　　I have previously met with Mr. Don Skiba and Mr. Joe Gaus of TRW Automotive.  The purpose of this meeting was to try to facilitate a business resolution to the patent infringement charge initiated by TRW in the U.S. District Court for the District of Delaware, rather than the alternative of an expensive legal proceeding.

4.　　During the meeting, I stated that TRW's complaint did not identify the specific applications where infringement was observed and that TK Holdings had been

1

accused of infringement on products (e.g., knee airbags) that we do not even manufacture in the United States.

5.      During the meeting, the TRW representatives explained that TRW has spent 2 years and a significant amount of money in determining that Takata has violated TRW's Intellectual Property Rights.  They also explained that they operate their business on a global level.  Nonetheless, the TRW representatives were unable to provide any further information or detail regarding their patent infringement allegations.

6.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:  July 3, 2008          _____
                               Al Bernat

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TRW VEHICLE SAFETY SYSTEMS INC and TRW AUTOMOTIVE GmBH | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 08-268-GMS |
| v. | ) ) ) | |
| TAKATA CORPORATION, TK HOLDINGS, INC. and TAKATA-PETRI AG | ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF KENNETH E. KROSIN IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)

I, Kenneth E. Krosin, declare as follows:

1.    I am a member in good standing of the Bars of the Commonwealth of Virginia and the District of Columbia and a partner at the law firm of Foley & Lardner LLP.

2.    I represent Defendants Takata Corporation, Takata-Petri AG and TK Holdings, Inc. in the above-titled action.

3.    I submit this declaration in support of TK Holdings, Inc.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) or, in the Alternative, for a More Definite Statement under Fed. R. Civ. P. 12(e).

4.    On or about May 30, 2008, I spoke with TRW's outside litigation counsel Robert Kahrl for the purpose of obtaining more detail on TRW's infringement allegations.

1

5.      During this conversation, I asked Mr. Kahrl to provide additional details regarding the above-captioned infringement action, including the identity of the accused products.  Mr. Kahrl refused to provide this information.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:  July 2, 2008

_____
Kenneth E. Krosin